Michael J. Boni
Joanne Zack
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Telephone: 610-822-0200
Facsimile: 610-822-0206
Email: mboni@bonizack.com
       jzack@bonizack.com

*Attorneys for Defendant Open Road Integrated Media, Inc.*
(Additional Counsel Appear on Signature Page)

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HARPERCOLLINS PUBLISHERS LLC, | |
| Plaintiff, | Case No. 11-cv-9499 (NRB) |
| v. | ECF CASE |
| OPEN ROAD INTEGRATED MEDIA, LLP | |
| Defendant. | |

**ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**

Defendant Open Road Integrated Media, Inc. (incorrectly identified in the complaint as "Open Road Integrated Media, LLP") ("Open Road"), by and through its counsel, hereby answers the complaint of plaintiff HarperCollins Publishers LLC ("HarperCollins) as follows:

**NATURE OF THE ACTION**

1. *By this action, HarperCollins, one of the world's leading English-language book publishers, seeks damages and injunctive relief arising out of Open Road's willful infringement of HarperCollins' rights under federal copyright law. HarperCollins is entitled to the relief sought herein because HarperCollins'*

> *agreement with author Jean Craighead George ("George"), among other pertinent provisions, grants HarperCollins the exclusive right to publish George's children's novel Julie of the Wolves (herein sometimes "the Work") "in book form," including explicitly via "computer, computer-stored, mechanical or other electronic means now known or hereafter invented."*

1. Open Road admits that HarperCollins' contract with Jean Craighead George (the "Contract") grants HarperCollins the right to publish Ms. George's children's work *Julie of the Wolves* "in book form," but denies that such grant includes the right to publish the work as an e-book. Open Road further admits that HarperCollins is a large book publisher seeking the alleged relief from Open Road, but denies that HarperCollins is entitled to any such relief. Except as expressly admitted herein, the allegations in this paragraph are denied.

> *2. Notwithstanding the foregoing grant of rights, without authorization from HarperCollins, Open Road, a digital publisher that seeks illicitly to capitalize on HarperCollins' four decades of publication and promotion of Julie of the Wolves, has begun publishing an electronic version of that book (an "e-book"). In furtherance of its infringing activities, Open Road has copied into electronic format the complete text of Julie of the Wolves and distributed this text in electronic format to various websites for sale to the public, including Amazon.com, Apple, BN.com, Kobo Books, and Sony Reader Store.*

2. Open Road admits it has begun publishing *Julie of the Wolves* as e-books, converted that work to digital format and distributed it as an e-book to the alleged recipients, but denies that it has done so in violation of any of HarperCollins' rights. Except as expressly admitted herein, the allegations in this paragraph are denied.

> *3. That Open Road seeks to publish Julie of the Wolves in electronic format – as opposed to paper format – fails to legitimize its conduct. The rights that HarperCollins acquired from George plainly encompass such electronic means of distribution, which is but a technology-enabled variant for how consumers can read the Work. Open Road's unlawful exploitation of those rights is directly competitive with sales of the Work in paper format and HarperCollins' own plans to publish Julie of the Wolves as an e-book. Open Road is understandably content to allow HarperCollins to have made its considerable investments in the Work, only now to reap where Open Road has not sown by seeking to divert sales of the Work from HarperCollins in the rapidly expanding e-books market. This fundamental impairment of rights ensured to HarperCollins by contract and*

> *copyright law should be enjoined and Open Road's unlawfully gotten gains therefrom disgorged.*

3. Denied.

## THE PARTIES

4. *Plaintiff HarperCollins is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 10 East 53rd Street, New York, New York. HarperCollins is one of the world's leading English-language book publishers. Its authors include luminaries such as Mark Twain, the Brontë sisters (Charlotte, Emily, and Anne), Charles Dickens, John F. Kennedy, Martin Luther King, Jr., and Shel Silverstein. HarperCollins was founded in New York by James and John Harper nearly 200 hundred years ago, as J. and J. Harper, later Harper & Brothers. In 1987, as Harper & Row, Publishers, Inc., it was acquired by News Corporation, and in 1990, it became HarperCollins following News Corporation's acquisition of British publisher William Collins & Sons. Today, through itself and its affiliates, HarperCollins maintains publishing groups in the United States, Canada, the United Kingdom, Australia/New Zealand, and India. Books published by Book Award, Newbery Medal, and Caldecott Medal. Consistently at the forefront of innovation and technological advancement, HarperCollins was one of the first publishers to digitize its content and create a global digital warehouse of that content.*

4. Open Road lacks sufficient information to admit or deny the allegations in this paragraph, and therefore the allegations are denied.

5. *Defendant Open Road is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 180 Varick Street, Room 816, New York, New York. Open Road was formed in 2009 and operates as a digital publisher and multimedia content company.*

5. Denied that Open Road is a limited liability company; otherwise admitted.

## JURISDICTION AND VENUE

6. *This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338.*

6. This paragraph calls for a legal conclusion to which no response is required. To the extent a response is required, denied.

7. *Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). Open Road resides and transacts business in the State of New York, and the activities complained of were carried on within this district.*

7. This paragraph calls for a legal conclusion to which no response is required. To the extent a response is required, denied.

## BACKGROUND

**HarperCollins' Publishing Activities**

8. *As a book publisher, HarperCollins' basic function is to present its authors' works to the reading publish by whatever means meet marketplace demand. Through the years, these means have evolved to include hardcover, trade paperback, and mass market paperback editions, audio editions, and more recently electronic or "e-book" formats. In return for grants from authors of the right to publish for the duration of the works' copyright terms, HarperCollins has made significant investments with respect to each publication format, always with the goal of maximizing potential readership, for the benefit of the public in general and its contracting authors in particular. A major focus of such investment in recent years has been with respect to e-books, a format that provides readers with the ability to read the identical works via electronic means (versus in paper format) and with the convenience of downloading them to electronic devices (whether computers, iPads, e-book readers such as the Kindle and Nook, or the like), instead of purchasing physical copies at bookstores and other retail establishments.*

8. Open Road lacks sufficient information to admit or deny the allegations in this paragraph, and therefore the allegations are denied. By way of further answer, it is denied HarperCollins made a significant investment in the print publication of *Julie of the Wolves*, and it is denied HarperCollins made any investment at all in the e-book publication of that work.

9. *HarperCollins' publishing rights derive from contracts with its authors. These contracts routinely provide HarperCollins rights sufficient to enable it to copy and distribute the works in whatever form and manner stimulate the purchase and readership of the works. In return, contracting authors are paid royalties keyed to sales of the works. These royalties are customarily accompanied by an advance against future royalty earnings, which the author keeps regardless of the sales success of the author's work.*

4

9. Open Road admits that HarperCollins' publishing rights derive from contracts with its authors, but denies that such contracts routinely provide HarperCollins rights sufficient to enable it to copy and distribute the works in whatever form and manner stimulate the purchase and readership of the works. Open Road admits that in return for the right to publish and sell the authors' works, contracting authors are paid royalties keyed to sales of the works, but denies that the Contract contained a royalty keyed to the sale of *Julie of the Wolves* as an e-book. Open Road lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore such allegations are denied.

> 10. *HarperCollins makes substantial expenditures in the works that it publishes. It employs more than 750 editors and other publishing professional in New York, who play an active role in every facet of the publishing process – from evaluating book proposals' publishing merit and extensive editing of manuscripts, through cover layout, print design, and distribution to thousands of brick-and-mortar and online retail outlets. It is not unusual for one or more editors to work actively on a given project over a series of months or even years prior to publication.*

10. Open Road lacks sufficient information to admit or deny the allegations in this paragraph, and therefore the allegations are denied.

> 11. *Once a work is published, HarperCollins makes further substantial expenditures to market the work and secure widespread distribution. During fiscal year 2011 (ending in June 2011), HarperCollins spent more than $70 million in promoting its works. These promotional activities encompassed, among others: trade and consumer advertising; distribution of review and promotional copies of the works to members of the media and influential readers; in-store displays; author tours and readings; and postings on websites. HarperCollins also employs several sales forces to call on bookstores and other retail outlets as well as wholesalers to solicit orders.*

11. Open Road lacks sufficient information to admit or deny the allegations in this paragraph, and therefore the allegations are denied. By way of further answer, it is denied that in 2011 (or at any time since the mid-1970's) HarperCollins spent any money promoting, or in any way promoted, *Julie of the Wolves*.

> 12. *Due in significant part to the foregoing range of activities, authors and books published by HarperCollins, including Julie of the Wolves, have achieved critical acclaim and significant commercial success. These efforts, and this success, have given HarperCollins and its various imprints an outstanding overall reputation and earned them enormous goodwill with authors, literary agents, booksellers, and the reading public. During fiscal year 2011, HarperCollins had 166 titles on The New York Times Bestseller List, with 18 titles reaching the number one position.*

12. Open Road lacks sufficient information to admit or deny the allegations in this paragraph, and therefore the allegations are denied.

**<u>The Development of E-Books</u>**

> 13. *As the name implies, an e-book is simply a book presented via electronic means. Technically, an e-book consists of an electronic file that contains the text of an entire book formatted in a manner that allows the e-book to be read in a linear fashion on a computer, iPad, dedicated handheld e-book reader such as a Kindle or Nook, and similar devices. These e-books contain the same text as their paper counterparts and are displayed for the reader in the same linear fashion, i.e., the reader reads lines of text no differently than if the works were being read in hardcover or paperback. The only real difference in the reading experience between e-books and their paper counterparts is that e-books display the copyrighted content on a computer or iPad screen or e-book reading device, rather than on paper. Instead of physically turning the paper page, the e-book reader pushes a button or computer key to move to the next page of text. In some instances, the reader scrolls his or her finger across the screen of the reading device to cause the "page" of the e-book to turn, mimicking how a hardcover or paperback book functions.*

13. Open Road admits that e-books can be read on an iPad, Kindle, Nook and other handheld e-reader devices (but not on all computers), that e-books contain the same text as that created by the author and published in paper form, and that e-book readers possess the alleged functionality. Except as expressly admitted herein, the allegations in this paragraph are denied.

> 14. *The concept of an e-book is a natural extension and outgrowth of technological developments that significantly predate HarperCollins' publishing agreement with George. The e-book as it presently exists traces its lineage to the early methods of automated textual storage and retrieval, including microfilm and microfiche, developed as long as a century ago, as well as to the development of electronic document creation, storage, retrieval, and output mechanisms in the 1950s and 1960s. Illustratively, in 1971, the year before Julie of the Wolves was*

> *published, what is often considered the first digital library – Project Gutenberg, a collection of the full electronic texts of books – was created. While the commercial realization of the e-book is of more recent vintage, its conception from these roots has long been foreseeable.*

14. Denied.

> *15. Today, e-books and e-book readers are omnipresent, and e-book sales compete directly with sales of books in paper formats. According to the Association of American Publishers, e-books comprised more than eight percent of total consumer book sales in 2010. In May 2011, Amazon.com announced that its e-book sales now exceed its printed book sales.*

15. Open Road admits that today consumer sales of e-books and e-book readers are robust. Open Road lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore such allegations are denied.

> *16. HarperCollins has made significant investments toward making e-books a marketplace reality. HarperCollins continues to expand its digital content and remains a global industry leader in the digital world. HarperCollins has released more than 8,700 e-books, as well as more than 70 "applications" to the digital marketplace that facilitate ready consumer access to downloading and purchasing of e-books.*

16. Open Road lacks sufficient information to admit or deny the allegations in this paragraph, and therefore the allegations are denied.

**HarperCollins' Licensing Agreement With Jean Craighead George**

> *17. Jean Craighead George is the author of more than eighty books for children and young adults. Her novel Julie of the Wolves was published in 1972 by HarperCollins, through its predecessor-in-interest Harper & Row, Publishers, Inc. Julie of the Wolves won the Newbery Medal in 1973 for the most distinguished contribution to literature for children and was a nominee in the Children's Books category in the 1973 National Book Awards. The Work was also named one of the best children's books of the past 100 years by Amazon.com and the Children's Literature Society.*

17. Admitted.

> *18. Julie of the Wolves is the story of a young girl, known as Miyax to her small Eskimo village and as Julie to her friend in San Francisco, who runs away when her life in the village becomes dangerous, only to find herself lost in the Alaskan*

7

> *wilderness. Without food and with time running out, Miyax tries to survive by copying the ways of a pack of wolves. Life in the wilderness proves to be a struggle, but when she finds her way back to civilization, Miyax is torn between her old and new lives – that of Miyax of the Eskimos or Julie of the wolves.*

18. Admitted.

> 19. *Pursuant to an agreement dated July 1, 1971 (the "Agreement"), HarperCollins through its predecessor-in-interest Harper & Row, Publishers, Inc., contracted with George to publish Amaroq – Leader of the Wolves, which name was subsequently changed to Julie of the Wolves.*

19. Admitted.

> 20. *Among other rights conveyed, the Agreement (in paragraph 1) grants to HarperCollins, for the term of copyright, the exclusive English-language rights in the United States, its territories and possessions, and Canada to publish Julie of the Wolves "in book form." This grant is itself encompassing of the right to publish the Work as an e-book. Paragraph 20 of the Agreement further makes clear that the scope of HarperCollins' publishing rights extends to exploitation of the Work "through computer, computer-stored, mechanical or other electronic means now known or hereafter invented" – language that serves only to reinforce HarperCollins' exclusive rights to publish the Work as an e-book.*

20. Open Right admits that the Contract grants HarperCollins the right to publish *Julie of the Wolves* "in book form," but denies that such grant encompasses the right to publish the work as an e-book. Except as expressly admitted herein, the allegations in this paragraph are denied.

> 21. *The stated limitation of paragraph 20 – that HarperCollins must seek George's consent to license rights in the Work enumerated in that paragraph – simply conditions HarperCollins' exercise of its exclusive rights in the limited circumstance in which, rather than itself commercially publishing and marketing the Work as an e-book, HarperCollins licenses a third party to do so. Put another way, Paragraph 20 does not grant George or any third party the right to publish the Work as an e-book, a right that instead belongs exclusively to HarperCollins. The foregoing is made plan by paragraph 23 of the Agreement, which provides that "[i]t is understood and agreed that [HarperCollins] shall have the exclusive right to sell, lease or make other disposition of the subsidiary rights in which [it] has an interest under the terms of clause. . .20."*

21. Denied.

8

      22.    *Pursuant to the Agreement, George received an advance against royalties to be earned for Julie of the Wolves. HarperCollins also has paid, and continues to pay, substantial royalties beyond the advance based on the sales of Julie of the Wolves. To date, HarperCollins has sold more than 3,800,000 units of Julie of the Wolves in all formats, including but not limited to hardcover and paperback formats. HarperCollins continues to sell the Work in both of those formats.*

      22.    Open Road admits that Ms. George received an advance for *Julie of the Wolves*, that such advance quickly earned out and that HarperCollins has paid and continues to pay royalties for the sale of *Julie of the Wolves* in print form. Open Road lacks sufficient information to admit or deny the remaining allegations in this paragraph, and therefore such allegations are denied.

      23.    *The United States Copyright Office granted a certificate of registration in the name of Jean Craighead George for Julie of the Wolves in 1972, which was renewed on November 20, 2000. Copies of the certificate and renewal are annexed to this Complaint as Exhibit A.*

      23.    Admitted.

      24.    *HarperCollins, an exclusive licensee of valid copyrights in Julie of the Wolves, is the beneficial owner of such valid copyrights. The Agreement is governed by New York law.*

      24.    Open Road admits the Contract is governed by New York law, and that HarperCollins is an exclusive licensee in certain, but by no means all, valid copyright interests in *Julie of the Wolves*. Except as expressly admitted herein, the allegations in this paragraph are denied.

**Open Road's Infringing Actions**

      25.    *Founded in 2009, Open Road is a digital publisher principally focused on publishing e-books. According to its website, Open Road "partners with authors, estates, and their agents to digitize, design, distribute, and market their backlist books electronically."*

      25.    Admitted.

> 26. *In late 2010, HarperCollins was advised by George's literary agent that George had received an offer from an unidentified publisher to publish Julie of the Wolves in e-book format. HarperCollins responded that HarperCollins alone controlled the e-book publishing rights and evinced its intent, consistent with its rights under the Agreement, to pursue publishing Julie of the Wolves in e-book format itself.*

26. Denied as stated. Open Road admits certain correspondence exists between a representative of Ms. George and HarperCollins, which correspondence speaks for itself. By way of further answer, it is denied that HarperCollins ever intended to publish *Julie of the Wolves* as an e-book, and it is denied HarperCollins has any right to do so under the Contract. Except as expressly admitted herein, the allegations in this paragraph are denied.

> 27. *Thereafter, George's literary agent informed HarperCollins that, notwithstanding HarperCollins' rights under the Agreement, Open Road intended to publish Julie of the Wolves in e-book format. Despite being advised by HarperCollins that proceeding with those plans would infringe upon HarperCollins' rights, in August 2011, Open Road publicly announced that, "[f]or the first time ever as ebooks, Open Road Integrated Media is releasing Julie of the Wolves, the classic story of a thirteen-year-old Eskimo girl who is protected by a wolf pack while lost on the Alaskan tundra."*

27. Open Road admits the alleged public announcement, but denies that it has infringed upon HarperCollins' rights. Except as expressly admitted herein, the allegations in this paragraph are denied.

> 28. *Open Road's conduct thereafter ripened into acts of copyright infringement. to wit, Open Road has commercially exploited Julie of the Wolves by copying into electronic format the complete text of Julie of the Wolves and distributing this text in electronic format to various websites for sale to the public, including Amazon.com, Apple, BN.com, Kobo Books, and Sony Reader store.*

28. Open Road admits it has begun publishing *Julie of the Wolves* as e-books, converted that work to digital format and distributed it as an e-book to the alleged recipients, but denies that it has engaged in copyright infringement. Except as expressly admitted herein, the allegations in this paragraph are denied.

*29.   Open Road's e-book edition of the Work is directly competitive with hardcover and paperback editions of the Work published by HarperCollins, as well as with HarperCollins' own plans to publish Julie of the Wolves as an e-book. Open Road's unauthorized reproduction and public distribution of Julie of the Wolves by electronic means devalues HarperCollins' exclusive rights to publish the Work and threatens to divert and is diverting sales of the Work from HarperCollins. Unless enjoined, Open Road's unlawful conduct will deprive HarperCollins of the benefits of the investments in and good will derived from its multi-decade publishing efforts in relation to the Work.*

29.   Denied.

## COUNT I

### Copyright Infringement

*30.   HarperCollins repeats and re-alleged each and every allegation contained in paragraphs 1 through 29 hereof with the same force and effect as if fully set forth herein.*

30.   Open Road incorporates by reference its responses to the preceding paragraphs of plaintiff's complaint.

*31.   Open Road's unauthorized publishing of Julie of the Wolves by electronic means, entailing the reproduction of the complete text of Julie of the Wolves and its public distribution to third parties for sale to the consuming public, constitutes acts of direct copyright infringement in violation of exclusive rights in Julie of the Wolves owned by HarperCollins under 17 U.S.C. § 106.*

31.   This paragraph calls for a legal conclusion to which no response is required. To the extent a response is required, denied.

*32.   In undertaking and persisting over objection in continuing these activities, Open Road's conduct constitutes willful copyright infringement.*

32.   This paragraph calls for a legal conclusion to which no response is required. To the extent a response is required, denied.

*33.   HarperCollins is entitled, under 17 U.S.C. §§ 501-502 & 504-505, to: injunctive relief; at its election, statutory damages (enhanced for willful infringement) or actual damages and Open Road's profits under the Copyright Act; and the recovery of HarperCollins' costs and reasonable attorney's fees.*

33.     This paragraph calls for a legal conclusion to which no response is required. To the extent a response is required, denied.

## AFFIRMATIVE DEFENSES

**First Defense**

The complaint fails to state any claims upon which relief can be granted.

**Second Defense**

Plaintiff's claims may not be brought in this Court because of the mandatory arbitration provision in the Contract.

**Third Defense**

Plaintiff's claims are barred by the doctrines of laches, unclean hands, waiver, acquiescence, first breach and estoppel.

**Fourth Defense**

Plaintiff's claims are barred because it does not own the applicable copyright in *Julie of the Wolves*.

**Fifth Defense**

The relief sought by plaintiff is barred, in whole or in part, because plaintiff has failed to mitigate any alleged damages.

**Sixth Defense**

Defendant's activities with respect to *Julie of the Wolves* were expressly authorized by a valid, written agreement with Ms. George, who retained e-book publication rights under the Contract.

**Seventh Defense**

Plaintiff has waived any and all claimed rights that it has failed to exploit.

Open Road reserves the right to advance any and all defenses available to it under federal and state law that may later be found applicable to this action and as may be established during discovery and by the evidence in this case.

**WHEREFORE**, defendant Open Road respectfully requests that the claims be dismissed with prejudice, with costs awarded to it, including reasonable attorneys' fees and costs, and that this Court grant all other relief that it deems just and proper.

Respectfully Submitted,

Dated: February 16, 2012

   /s/ Joanne Zack
Michael J. Boni
Joanne Zack
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-0200
mboni@bonizack.com
jzack@bonizack.com

Robert J. LaRocca
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700
rlarocca@kohnswift.com

Robert F. Levine
Kim G. Schefler
**LEVINE PLOTKIN & MENIN LLP**
1740 Broadway, 22nd Floor
New York, NY 10019
Tel: (212) 245-6565
rlevine@lpmny.com
kschefler@lpmny.com

*Attorneys for Defendant*
*Open Road Integrated Media, Inc.*