UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
HARPERCOLLINS PUBLISHERS LLC,

                Plaintiff,

     - against -

OPEN ROAD INTEGRATED MEDIA, LLP,

               Defendant.
---------------------------------------X

**MEMORANDUM AND ORDER**

11 Civ. 9499 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On March 17, 2014, the Court filed a Memorandum and Order granting summary judgment to plaintiff HarperCollins Publishers LLC ("HarperCollins") on its copyright infringement claim against defendant Open Road Integrated Media, LLP ("Open Road"), and inviting the parties either to reach a resolution or to brief the issue of remedies. No settlement having been reached, HarperCollins now moves for a permanent injunction, statutory damages, attorneys' fees, and costs. Open Road concedes that HarperCollins is entitled to costs but opposes the other relief sought. For the reasons stated herein, the Court grants HarperCollins' motion in part and denies it in part.

## <u>BACKGROUND</u>

### A.   The Liability Opinion

We assume the reader's familiarity with the facts and legal conclusions described in our prior opinion. <u>HarperCollins Publishers LLC v. Open Road Integrated Media, LLP</u>, 7 F. Supp. 3d

363 (S.D.N.Y. 2014) ("HarperCollins I").   To summarize, the underlying dispute involved the scope of a 1971 publishing contract (the "1971 Contract") between the late Jean George, author of the acclaimed children's novel Julie of the Wolves, and the publishing house Harper & Row, plaintiff's predecessor in interest.   In 2010, Open Road contacted Ms. George to propose that it would publish an e-book edition of Julie of the Wolves. Although Ms. George invited HarperCollins to match the fifty percent royalty offered by Open Road, HarperCollins declined to publish an e-book on such generous terms.   Ms. George then reached agreement with Open Road, purporting to authorize it to publish the e-book.   Shortly after Open Road released its edition in 2011, HarperCollins brought this action, claiming that the e-book infringed HarperCollins' copyright interest in Julie of the Wolves under the 1971 Contract.   Open Road responded that there was no infringement because e-book publication rights were outside of the scope of the 1971 Contract.   After discovery, both sides moved for summary judgment.

In support of their respective positions, the parties made arguments not only based on the terms of the 1971 Contract, but also based on, inter alia, the course of performance under that contract and expert opinions on computer technology and the publishing industry.   While our prior opinion discussed those

arguments, our conclusion rested on the language of the 1971 Contract. A crucial provision in that contract, Paragraph 20, reads as follows:

> Anything to the contrary herein notwithstanding, the Publisher shall grant no license without the prior written consent of the Author with respect to the following rights in the work: <u>use thereof in storage and retrieval and information systems, and/or whether through computer, computer-stored, mechanical or other electronic means now known or hereafter invented</u> and ephemeral screen flashing or reproduction thereof, whether by print-out, phot[o] reproduction or photo copy, including punch cards, microfilm, magnetic tapes or like processes attaining similar results, and net proceeds thereof shall be divided 50% to the Author and 50% to the Publisher. However, such license shall not be deemed keeping the work in print once the work has gone out of print in all editions.

(Emphasis added.)

Interpreting the 1971 Contract in light of the so-called "new use" line of cases, which address the recurring problem of how to interpret the scope of old copyright agreements in light of later-developed technologies,[1] we found that the emphasized language in Paragraph 20, "encompassing as it does the forward-looking reference to technologies 'now known or hereafter invented,' is sufficiently broad to draw within its ambit e-book publication." <u>HarperCollins I</u>, 7 F. Supp. 3d at 372. We concluded that the 1971 Contract granted HarperCollins the

---

[1]   <u>See</u> <u>Bartsch v. Metro-Goldwyn-Mayer, Inc.</u>, 391 F.2d 150 (2d Cir. 1968); <u>Bourne v. Walt Disney Co.</u>, 68 F.3d 621 (2d Cir. 1995); <u>Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.</u>, 145 F.3d 481 (2d Cir. 1998); <u>Random House, Inc. v. Rosetta Books LLC</u>, 150 F. Supp. 2d 613 (S.D.N.Y. 2001), <u>aff'd</u>, 283 F.3d 490 (2d Cir. 2002); <u>Reinhardt v. Wal-Mart Stores, Inc.</u>, 547 F. Supp. 2d 346 (S.D.N.Y. 2008).

exclusive right to license third parties to publish e-book versions of <u>Julie of the Wolves</u>, subject to Ms. George's approval, and thus that Open Road infringed HarperCollins' copyright.

**B.   Subsequent Events[2]**

Open Road has stopped selling its <u>Julie of the Wolves</u> e-book, but it did not stop immediately.  Our opinion holding Open Road liable was filed on March 17, 2014, and Open Road's counsel and senior executives received and reviewed the opinion that day.  Davis Decl. ¶ 6; Schefler Decl. ¶ 8.  Open Road decided to pursue a negotiated settlement with HarperCollins, which it hoped would include a license to continue publishing the e-book. Davis Decl. ¶ 6; Schefler Decl. ¶ 8.  On April 2, in a meeting between Open Road's outside counsel Kim Schefler and HarperCollins' general counsel Christopher Goff, Schefler proposed terms including a monetary settlement and a license for Open Road.  Schefler Decl. ¶ 9.

---

[2]    The facts recited here, which relate to events subsequent to the parties' submission of their Rule 56.1 statements and counterstatements, are undisputed except as noted.  We rely on the Declaration of R. Bruce Rich, Esq., dated May 23, 2014 ("Rich Decl."), and exhibits thereto; the Declaration of Chris Davis, dated June 19, 2014 ("Davis Decl."); the Declaration of Kim G. Schefler, Esq., dated June 19, 2014 ("Schefler Decl."); and the Reply Declaration of R. Bruce Rich, dated July 2, 2014 ("Rich Reply Decl."), and exhibits thereto.  We also refer to Plaintiff's Memorandum of Law dated May 23, 2014 ("Pl. Mem."); Defendant's Memorandum of Law dated June 20, 2014 ("Def. Mem."); Plaintiff's Reply Memorandum of Law dated July 2, 2014 ("Pl. Reply Mem."); and the transcript of oral argument held on the question of liability on January 30, 2014 ("Tr.").

During the April 2 meeting, Goff stated that "Harper[Collins] was surprised Open Road hadn't yet taken the book down," to which Open Road's counsel replied that "Open Road would do so if we were unable to work out a license as part of the settlement." Id. On April 7, Goff called Schefler to tell her that HarperCollins was not interested in a license and that HarperCollins would "like to see the book taken down." Id. at ¶ 10 (internal quotation marks omitted). This was HarperCollins' first explicit demand to Open Road to stop selling the e-book. Id.

On the same day, Open Road "initiated steps to cease all sales of Julie of the Wolves e-books" by contacting its retailers and by taking technological measures to indicate that the e-book had been "[w]ithdrawn from [s]ale." Davis Decl. ¶ 9 (internal quotation marks omitted). According to Open Road, the last sale took place on April 9. Id. ¶¶ 10, 14. During the entire period from March 17 through April 9, a total of 304 e-books were sold. Id. ¶ 11.[3]

---

[3] HarperCollins' outside counsel states that his firm's "staff . . . determined that as recently as May 1, 2014, the Julie of the Wolves e-book was still available for sale on each of the retailer websites that were listed on Open Road's website." Rich Decl. ¶ 14. Although this statement is in tension with Open Road's position that the last sale took place on April 9, any conflict is immaterial. HarperCollins does not argue that Open Road's copyright infringement continued after May 2014, and, as noted below, Open Road concedes that it continued to market Julie of the Wolves online until June 2014. Our conclusions do not depend upon the precise date of Open Road's last sale.

On  May  23,  2014,  no  settlement  having  been  reached, HarperCollins  filed  the  instant  motion  for  remedies.   As of that day,  Open  Road  and  at  least  one  of  its  distributors  were continuing  to  market  the  e-book  edition  of  Julie of the Wolves online.    Specifically,  Open  Road's  website  contained  a  page dedicated  to  Julie  of  the  Wolves,  including  links  to  "BUY THE EBOOK"  at  several  online  retailers.    Rich  Decl.  ¶ 15 & Ex. K. Further,  the  website  of  Google  Play  --  one  of  Open  Road's retailers  --  contained  a  page  devoted  to  Julie  of  the  Wolves, listing  "Open  Road  Media"  as  the  "Publisher"  and  including  an "Add to Wishlist"  function.    Rich  Decl. ¶ 16 & Ex. L.

In  late  May  and  June  2014,  after  HarperCollins  filed  its moving  papers,  Open  Road  began  to  remove  references  to  Julie of the Wolves  from  its  website.    Davis  Decl.  ¶ 12.    In  its opposition,  Open  Road  declared  that  it  by  then  had  "made  all reasonable  efforts  to  remove  all  references  to  the  e-book  from any  Open  Road  online  or  offline  materials."   Id.[4]  Open  Road  also declared  that  it  "has  no  intention  of  selling  Julie  of  the Wolves  e-books"  unless  it  obtains  a  favorable  judgment  in  this matter  or  a  license  from  HarperCollins.   Id. ¶ 14.

---

[4]    Open  Road  points  out  that  its  right  to  sell  Julie of the Wolves  e-books outside  of  the  United  States  and  Canada  has  not  been  contested,  and  that  its website  advertises  other  works  as  to  which  Open  Road  lacks  North  American rights.   Davis  Decl.  ¶ 13.   Open  Road  acknowledges,  however,  that  some  ninety percent  of  its  sales  of  Julie  of  the  Wolves  after  March  17,  2014,  were  made in  the  United  States  and  Canada.   Id. ¶ 5.

## DISCUSSION

The question of Open Road's liability having been decided, the remaining issues are:  (A) whether to enter a permanent injunction, and if so, its scope; (B) the amount of statutory damages; and (C) whether to award attorneys' fees, and if so, in what amount.[5]  We address these issues in turn.

### A.   Permanent Injunction

HarperCollins seeks an order permanently enjoining Open Road from, inter alia, publishing Julie of the Wolves, holding itself out as an authorized publisher of Julie of the Wolves, and publishing other works for which HarperCollins has exclusive publication rights under agreements containing the language found in Paragraph 20 of the 1971 Contract.  Open Road responds that no injunction is warranted or, in the alternative, that HarperCollins' proposed injunction is overbroad.[6]  Under the circumstances, we find that an appropriately circumscribed injunction is appropriate.

Under the Copyright Act, the Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502.  "An injunction, however, is not mandatory and does not

---

[5]    The parties agree that $7,040.62 in costs should be taxed against Open Road.

[6]    HarperCollins submitted two proposed injunctions.  We focus on its second proposal, which was revised in light of Open Road's opposition to the original proposal's breadth.  See Pl. Reply Mem. at 5; Rich Reply Decl. Ex. A.

automatically follow a determination that a copyright has been infringed." Pearson Educ., Inc. v. Ishayev, 963 F. Supp. 2d 239, 253-54 (S.D.N.Y. 2013). "A copyright plaintiff seeking a permanent injunction still must satisfy the traditional four-factor test [set forth in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006)] before the district court may use its equitable discretion to grant such relief." Warner Bros. Entm't v. RDR Books, 575 F. Supp. 2d 513, 551 (S.D.N.Y. 2008).[7] Thus, as a threshold matter, a plaintiff must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, 547 U.S. at 391.

"[T]he critical question for a district court in deciding whether to issue a permanent injunction is whether there is a reasonable likelihood that the wrong will be repeated." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 504 (2d Cir. 2014) (quoting SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1100 (2d Cir. 1972)) (ellipsis omitted). Thus, in copyright

---

[7]     Although the eBay case addressed the propriety of a permanent injunction in a patent infringement case, the Second Circuit has held that "eBay applies with equal force (a) to preliminary injunctions (b) that are issued for copyright infringement." Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (emphasis added). As the parties agree, eBay applies a fortiori to permanent injunctions issued for copyright infringement.

cases, the prevailing plaintiff must show some "probability that [the defendant] would resume its infringement in the future." Dolori Fabrics, Inc. v. Limited, Inc., 662 F. Supp. 1347, 1358 (S.D.N.Y. 1987).  Although courts may not "presume irreparable harm," Salinger, 607 F.3d at 82, courts have consistently found that "[h]arm can be irreparable, and adequate remedies at law lacking, where . . . , absent an injunction, the defendant is likely to continue infringing the copyright," Broadcast Music, Inc. v. PAMDH Enters., Inc., No. 13 Civ. 2255 (KMW), 2014 WL 2781846, at *4 (S.D.N.Y. June 19, 2014); see, e.g., Complex Sys., Inc. v. ABN AMRO Bank N.V., No. 08 Civ. 7497 (KBF), 2014 WL 1883474, at *11 (S.D.N.Y. May 9, 2014); Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).

Here, it is undisputed that Open Road continued to sell its Julie of the Wolves e-book after our prior opinion found this to be copyright infringement.  Rather than take immediate steps to conform to our decision, it apparently viewed that decision as merely a prelude to negotiations.[8]  Furthermore, although Open Road discontinued sales after receiving HarperCollins' demand, it is apparent that Open Road did not take every reasonable action to discontinue marketing its unauthorized edition of

---

[8]    In noting the possibility of a negotiated settlement, the Court neither relieved nor purported to relieve Open Road of its responsibility to comply with the law while pursuing negotiations.  See HarperCollins I, 7 F. Supp. 3d at 378.

Julie of the Wolves until after briefing on the appropriate remedies had commenced.   In other words, Open Road failed to ensure compliance with our decision until its failure was called to the Court's attention.   Under these circumstances, we conclude that there is at least a reasonable likelihood of future infringement absent an injunction.   Thus, the first two eBay factors are satisfied.[9]

   The remaining two eBay factors also support injunctive relief.   Assuming an injunction that is crafted so as not to interfere with Open Road's legitimate conduct, the balance of hardships strongly favors HarperCollins.   "[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product."   WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 287 (2d Cir. 2012), cert. denied, 133 S. Ct. 1585 (2013) (quoting WPIX, Inc. v. ivi, Inc., 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)).   Further, injunctive relief does not disserve the public interest.   Indeed, it is a premise of copyright law that "the public has a compelling interest in protecting copyright owners' marketable rights to their work."

---

[9]   Open Road argues that HarperCollins suffers no harm from the likelihood of future infringement because "it does not have the right to sell Julie of the Wolves e-books without Ms. George's consent."   Def. Mem. at 9.   This argument, which would also imply that HarperCollins suffered no harm from Open Road's past infringement, proves too much.   We agree with HarperCollins that the prospect of future infringement risks interference with HarperCollins' exclusive "business opportunit[y]," Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004), to make a bargain with the George estate.   This is a quintessential example of harm that, because it is difficult to remedy with damages, can support injunctive relief.   See id.

WPIX, 691 F.3d at 287.   In this case, we conclude that no distinct harm to the public would result from an appropriately narrow injunction.

In sum, HarperCollins has met its burden to show that equitable relief would be proper.  We exercise our discretion to enter a permanent injunction on terms similar to those proposed by HarperCollins in its reply papers, but somewhat narrower in scope.

The HarperCollins proposal would enjoin Open Road from infringing HarperCollins' copyright not only in Julie of the Wolves, but also in other works as to which:

> HarperCollins holds the exclusive right to publish "in book form" where, in addition, the operative contract or agreement conveys to HarperCollins the exclusive right to publish or to license publication of the work for "use thereof in storage and retrieval and information systems, and/or whether through computer, computer-stored, mechanical or other electronic means now known or hereafter invented" or contains a grant of rights comprising substantially identical language[.]

Rich Reply Decl. Ex. A ¶ 2(a) (emphasis added).  The emphasized language is drawn from Paragraph 20 of the 1971 Contract.  We have previously noted that at least six of Ms. George's publishing contracts with Harper & Row contained identical language, that eight others contained similar language, and that these terms were commonly included in other publishing contracts negotiated by Ms. George's literary agency.  See HarperCollins I, 7 F. Supp. 3d at 367 & n.3.

An injunction "should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." Waldman Publ'g Co. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994). Nonetheless, under appropriate circumstances, a court may "permanently enjoin the future infringement of works owned by the plaintiff but not in suit." Walt Disney Co. v. Powell, 897 F.2d 565, 568 (D.C. Cir. 1990). Because the result in this case turned on the specific language found in the 1971 Contract, we conclude that an injunction is appropriate as to works whose copyright assignments to HarperCollins used the same language. However, because variations on the contractual language exist, see HarperCollins I, 7 F. Supp. 3d at 367 & n.3, and because we have not had occasion in this case to consider the ramifications of those variations, see id. at 374, we decline to extend the scope of our injunction to works as to which the publishing contracts contained "substantially identical language."[10]

**B.   Statutory Damages**

HarperCollins seeks an award of statutory damages of at least $30,000, enhanced in the Court's discretion on the basis

---

[10]   We also decline to order Open Road to destroy all of its copies of Julie of the Wolves. We conclude that the destruction remedy would be "excessive in this instance" because (1) the infringing copies are digital only, (2) Open Road appears to have an uncontested right to publish its e-book edition outside of the United States and Canada, and, most importantly, (3) we expect Open Road to be "adequately chastened by" the remedies we impose today. N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Grp. Int'l, LLC, 06 Civ. 5158 (LTS), 2010 WL 2158294, at *3 (S.D.N.Y. May 27, 2010).

of Open Road's willful conduct.   Open Road consents to the Court's determination of up to $30,000 of statutory damages, but insists on a jury determination of any higher award.   We conclude that an award of $30,000 is appropriate.

The Copyright Act gives a successful plaintiff the option "to recover, instead of actual damages and profits, an award of statutory damages."   17 U.S.C. § 504(c)(1).   In general, statutory damages may be awarded in the range of $750 to $30,000, but if the copyright owner proves that the infringement was committed willfully, the damages may be enhanced up to $150,000.   See id. §§ 504(c)(1)-(2).

To establish that the defendant's infringement was willful, the plaintiff must show either that the defendant had "knowledge that its actions constitute an infringement," Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986), or that "the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights," Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005).   At the summary judgment stage, the court may resolve the issue of willfulness if "there are sufficient undisputed material facts on the record to make the question appropriate for summary judgment."   Lipton v. Nature Co., 71 F.3d 464, 472 (2d Cir. 1995).

We agree with HarperCollins that Open Road's conduct after our prior opinion issued was willful as a matter of law. That opinion placed Open Road on definitive notice that its sales of the <u>Julie of the Wolves</u> e-book constituted copyright infringement, yet Open Road continued to make sales until after it received HarperCollins' demand to desist. This was willful infringement, regardless of whether Open Road was simultaneously seeking a license.[11]   Thus, the maximum applicable amount of statutory damages is $150,000.

By its own terms, the Act permits the Court to set statutory damages within the appropriate range in such an amount "as the court considers just."   17 U.S.C. § 504(c)(1).   The following factors have been held relevant to this determination: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." <u>Bryant v. Media Right Productions, Inc.</u>, 603 F.3d 135, 144 (2d Cir. 2010).

Considering these factors, we conclude that the appropriate amount of statutory damages is $30,000.   This figure is a

---

[11]   We need not decide whether Open Road's infringing activities were willful prior to March 17, 2014.   Willful or not, statutory damages are awarded in a single amount for "all infringements involved in the action, with respect to any one work."   17 U.S.C. § 504(c)(1).

reasonable reflection of the economic significance of this case. Open Road's total revenue from sales of Julie of the Wolves was $39,207.76, half of which was shared as a royalty with Ms. George and her estate, which is not a party to this litigation. Davis Decl. ¶ 5.  Some ten percent of the e-book sales were in markets outside of the geographic scope of the publishing agreement, and thus did not involve infringement of HarperCollins' copyright.  Id.  Thus, it appears that Open Road's profit from infringing activity was less than $20,000. Further, HarperCollins concedes that its lost revenue, if any, would be "difficult to quantify."  Pl. Mem. at 16.

Non-economic considerations do not support a statutory damages award of over $30,000.  We question whether Open Road's conduct before March 17, 2014, was willful as a matter of law,[12] and we are disinclined to enhance statutory damages substantially on the basis of sales, however ill advised, that took place at the very end of litigation, at a time period when the parties were in settlement discussions, and which ended soon after the plaintiff's demand.  This case is well suited to an award of $30,000 -- the amount at the very threshold of an enhancement for willfulness.[13]

---

[12]   HarperCollins itself concedes that before we announced our decision on liability, it had "not [been] inclined to seek enhanced statutory damages based on willful infringement." Pl. Mem. at 13.
[13]   We have considered each of the factors enumerated in Bryant.  In particular, we find that Open Road will be amply deterred by the relief

Finally, we note that the Supreme Court has held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998). Thus, the amount of statutory damages within the statutorily permissible range "is a question for the jury, unless both sides agree to decision by the court." BMG Music v. Gonzalez, 430 F.3d 888, 892 (7th Cir. 2005).

Here, HarperCollins seeks the Court's determination of the amount of statutory damages, while Open Road consents to judicial determination of an amount of up to $30,000. In light of these positions and our determination of the appropriate amount of statutory damages, we conclude that each party has waived its right to have a jury determine the statutory damages. Accordingly, statutory damages are awarded to HarperCollins in the amount of $30,000.

## C. Attorneys' Fees

HarperCollins applies for attorneys' fees in the amount of $1,089,371.50, which is seventy percent of the sum billed by its outside counsel in connection with this case. Rich Decl. ¶¶ 17, 24. For the following reasons, we conclude that an award of attorneys' fees is not warranted.

---

awarded today, and that third parties will be deterred by the prospect of similarly protracted and expensive litigation.

The Copyright Act authorizes the Court, "in its discretion," to "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The Supreme Court has underscored that courts are to exercise this discretion in a manner that is "faithful to the purposes of the Copyright Act," Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994), which, by encouraging and rewarding authors, "ultimately serves the purpose of enriching the general public through access to creative works," id. at 527.

The Court's discretion in determining whether to award attorneys' fees is guided by the following nonexclusive list of factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 108 (2d Cir. 2014) (quoting Fogerty, 510 U.S. at 534 n.19). Substantial, although not necessarily dispositive, weight is given to the factor of objective unreasonableness. See Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 121-22 (2d Cir. 2001).

"A copyright infringement claim" -- or, here, a defense -- "is objectively unreasonable when [it] is clearly without merit or otherwise patently devoid of a legal or factual basis." Porto v. Guirgis, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009)

(quoting Diplomatic Man, Inc. v. Nike, Inc., No. 08 Civ. 139 (GEL), 2009 WL 935674, at *3 (S.D.N.Y. Apr. 7, 2009)).  We find that although Open Road's position did not prevail, it was not objectively unreasonable.

The heart of HarperCollins' argument to the contrary is that "[b]ecause the Court found the [1971 Contract] unambiguous with respect to electronic rights, Open Road's advocacy of a contrary position was necessarily objectively unreasonable." Pl. Mem. at 19.  But the mere fact that the Court was able to interpret the contract as a matter of law does not mean that the contrary argument was clearly unmeritorious or patently devoid of support.  Our reticence to characterize the losing position as objectively unreasonable is informed by the fact that this dispute arose in the context of a developing, and still somewhat uncharted, area of copyright law.

"In an appropriate case, the presence of other factors might justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable." Matthew Bender, 240 F.3d at 122.  But here, no other factor supports a fee award.  HarperCollins argues, inter alia, that the need for compensation is "especially strong where the financial amount at stake between the parties is small, for without the prospect of a fee award in such cases, the injured party might be deterred altogether from enforcing its rights."

Pl. Mem. at 20 n.9 (alterations and internal quotation marks omitted).  Although such reasoning may be persuasive in some circumstances, it is inapplicable here.  The manner in which HarperCollins has conducted this litigation, by devoting resources to it far in excess of its individual economic significance, demonstrates that HarperCollins has had ample motivation to enforce its copyright.  The wider interest of both parties, transcending the facts of this case, is readily apparent.  As HarperCollins' counsel explained at oral argument, "the ultimate disposition of this case[] is likely to have a ripple effect beyond the immediate parties, both within a publishing house like Harper and amongst other trade and other publishers."  Tr. at 3-4.[14]

Accordingly, we decline to exercise our discretion under § 505 of the Copyright Act to award attorneys' fees.  Thus, we need not decide whether a fee award in excess of $1 million would be a "reasonable" fee within the meaning of that statute.[15]

---

[14]   We also find that Open Road's defenses were neither frivolous nor improperly motivated.

[15]   We are skeptical that the stakes of this case could justify an award of such magnitude.  As we recently observed, "[i]n calculating reasonable attorneys' fees, we are mindful that while 'parties to a litigation may fashion it according to their purse,' it is not necessarily appropriate to require the losing party to wholly compensate the prevailing party for its approach to the litigation."  CBS Broad. Inc. v. FilmOn.com, Inc., No. 10 Civ. 7532 (NRB), 2014 WL 4088695, at *1 (S.D.N.Y. Aug. 15, 2014) (quoting Farmer v. Arabian Am. Oil Co., 31 F.R.D. 191, 193 (S.D.N.Y. 1962), rev'd, 324 F.2d 359 (2d Cir. 1963), rev'd, 379 U.S. 227 (1964)).  Thus, "what may be a reasonable sum to charge clients for attorneys' services" -- even reduced by thirty percent -- "is not necessarily equivalent to a reasonable fee to compel a losing party to pay its adversary at the conclusion of litigation."  CBS Broad., 2014 WL 4088695, at *1.  Further, were we to reach the issue of

## CONCLUSION

For the foregoing reasons, plaintiff's motion for remedies (Docket No. 49) is granted in part and denied in part. Defendant shall comply with the terms of the accompanying injunction. This Court shall retain jurisdiction for the purposes of enforcing that injunction. Plaintiff is awarded statutory damages in the amount of $30,000 and costs in the amount of $7,040.62. The Clerk of Court is respectfully directed to close this case.

Dated:     New York, New York
           November 6, 2014

                                   NAOMI REICE BUCHWALD
                                   UNITED STATES DISTRICT JUDGE

---

the amount of fees, we would include in our calculus HarperCollins' initial decision not to match the royalty offer made to Ms. George. Had HarperCollins agreed to match the fifty percent royalty offer, Ms. George would not have come to terms with Open Road and there would have been no disproportionately costly litigation.

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorneys for Plaintiff**

R. Bruce Rich, Esq.
Mark J. Fiore, Esq.
Sabrina A. Perelman, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

**Attorneys for Defendants**

Michael J. Boni, Esq.
Joanne E. Zack, Esq.
John E. Sindoni, Esq.
Boni & Zack LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004

Robert J. LaRocca, Esq.
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107